## GOLDMAN v. GOEBEL.

## AMERICAN RY. SUPPLY CO. et al. v. SAME.

### (Circuit Court of Appeals, Second Circuit. December 3, 1894.)

### Nos. 112, 113.

1. PATENTS—INVENTION—CHANGE OF MATERIAL.

The use of wire cloth to form the entire crown of a hat being old, and the patentee having abandoned claims for the use of wire cloth, or of wire cloth cut diagonally to form the side crown of a cap having a flexible tip, and the use of diagonally cut hair cloth strips with an angular seam to form the side crown of such a cap being old, it is not patentable to use for the side crown of a cap having a flexible tip a wire-cloth strip with an angular seam.

2. SAME—CAPS AND HATS.

Goebel's patent, No. 345,965, for an improvement in caps and hats, *held* void for lack of invention.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Two suits in equity by John C. Goebel, one against Philipp Goldman, the other against the American Railway Supply Company and others, for infringement of a patent granted to complainant for an improvement in caps and hats. Decrees for plaintiff were granted in the court below, and defendants appealed. A motion for a preliminary injunction had been previously denied. 55 Fed. 828.

W. C. Hauff, for appellants.

Harry Cobb Kennedy, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The bills in equity in these two cases are based upon the infringement of letters patent No. 345,965, dated July 20, 1886, and granted to John C. Goebel for an improvement in caps and hats. The defendant Goldman manufactured and sold, and the American Railway Supply Company sold, the infringing caps. Upon final hearing, the circuit court for the Southern district of New York directed injunctions to issue against each defendant. From these interlocutory decrees the defendants appealed. The patented cap was particularly intended to be a uniform cap, and to be used by railway employés. The patentee, in

his specifications, describes the object and the essential features of his invention as follows:

"The object I have in view is to provide a very light and stiff body or skeleton for caps and hats, that will form a durable stay for the sides of the crown, and an elastic stretcher for the flexible tip; and for that purpose my invention consists in making such skeleton for the crown of wire cloth, cut in a manner that the woven wires are on diagonal lines relative to the band and tip, and that the connecting seam of the joint of the wire cloth is also on a diagonal line. * * * The essential features of my device, therefore, are not only the use of wire cloth for the stay or skeleton of the side crown of a hat or cap, but also the peculiar cutting of the wire cloth to have its wires on a diagonal line to the edges of the cloth, as else the desired elastic expansion and contraction of the side crown for stretching the tip will not be obtained, and that otherwise the shape of such wire-cloth body cannot be made conical."

The claim of the patent is as follows:

"In a cap or hat having a flexible tip, the body or skeleton of the side crown formed of wire cloth, the ends of which are connected by angular seams, as set forth."

The state of the art at and before the date of the alleged invention will sufficiently appear from the following facts: At that time the body or skeleton of caps having a flexible tip was frequently made of hair cloth, the strips of hair cloth being cut sometimes diagonally and sometimes upon a line parallel to the tip, and the ends of the strips being joined together either by a diagonal or by a straight seam. When the cloth was cut diagonally, a diagonal seam was naturally preferred. Wire cloth for the entire crown of a cap or hat had been used, as shown in letters patent No. 36,549, dated September 23, 1862, to James W. Bryant, but it does not appear that the side crown of caps having a flexible tip had been made of wire cloth. Letters patent No. 178,625, dated June 13, 1876, granted to Abraham Freshfield, described a hat body made of wire cloth bent into the form of the entire crown of a hat, and the drawings of the patent showed that the wires were at an angle of about 45 degrees to the brim of the hat. With these facts in mind, the history of the patent as it went through the patent office is important. The claims which were originally asked for were:

"(1) In a cap or hat having a flexible tip, the body or skeleton of the side crown formed of wire cloth, substantially as set forth.

"(2) In a cap or hat having a flexible tip, the body or skeleton of the side crown formed of wire cloth cut to have its wires on diagonal lines relative to such tip, substantially as set forth."

The patent office having rejected these claims by reference to the Freshfield patent, the patentee erased the first claim, and, changing the numeral of claim 2 to claim 1, added, as number 2, the claim which is contained in the patent, and has been quoted. The patent office again rejected claim 1 upon the authority of the Freshfield patent, in which decision the patentee acquiesced, and erased the claim, whereupon the patent was issued as it now appears. The question of patentability is the important one in the case, and is this: The use of wire cloth to form the entire crown of a hat being old, and the patentee having abandoned claims for the use of wire cloth, or of wire cloth cut diagonally to form the side crown of a

cap having a flexible tip, and the use of diagonally cut hair-cloth strips with an angular seam to form the side crown of such a cap being old, was it patentable to use, for such a crown, a diagonally cut wire cloth strip with an angular seam? The complainant's expert is of opinion that a skeleton for the side crown formed of wire cloth having the diagonal arrangement of wires, and having its ends joined by a diagonal seam, is patentable. It is not important to consider whether the claim is for inclined wires and an angular seam, or could be construed to be for wires, however cut, and an angular seam; for nobody supposes that wires not inclined and an angular seam are a feature to be desired. The practical construction of the patent must be in accordance with the expert's theory, and the question is therefore reduced to the patentability of this mode of joining the ends of inclined wires. It being apparent that when the wires are cut diagonally an angular seam is the natural method of sewing the ends together, and it having been shown that an angular seam was the usual method of joining the diagonal ends of hair-cloth side crowns, there is nothing patentable in thus uniting the ends of a wire-cloth strip. After the patentee had abandoned the claim that he had made a patentable improvement in a cap having a flexible tip, by making the skeleton of the side crown from wire cloth, whether cut upon lines parallel or diagonal to the tip, there is no room for the contention that the manner in which the ends of the strip should be joined together required the help of invention. The patentee adopted the known mechanical practice of his predecessors.

The decrees of the circuit court are reversed, with costs, and the cases are remanded to that court, with instructions to dismiss the bills, with costs.